IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SCOTT DIXON and DIXON HOSPITALITY GROUP, INC., | ) ) ) | |
| Plaintiffs, | ) ) | No. 12 C 2449 |
| v. | ) ) | Judge Robert W. Gettleman |
| JOELEON HOLDINGS, LLP, HARRY HATCHARD, MARGARET HATCHARD, WILLIAM BRUNNER, HARRY MOBRAY, JOEL FEIST, RANDALL FEIST and BARBARA FEIST (as Trustees of the Feist Family Trust) and STEVE FARROH, | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

In Counts I through III of a four count complaint, plaintiffs Scott Dixon ("Dixon") and Dixon Hospitality Group ("DHG") have sued defendants Joeleon Holdings, LLP, Harry Hatchard, Margaret Hatchard, William Brunner, Harry Mobray, Joel Feist, Randall Feist and Barbara Feist (as Trustees of the Feist Family Trust) and Steve Farroh, for breach of an Illinois Limited Partnership Agreement, breach of fiduciary duty, and breach of the duty of good faith and fair dealing. Count IV is a claim for fraudulent inducement against defendant Joel Feist only. Defendants have moved to dismiss for improper venue[1] or, in the alternative, to transfer venue to the United States District Court for North Dakota. For the reasons discussed below, that motion is denied.

---

[1]Defendants' original motion also sought dismissal for lack of personal jurisdiction, but the court orally denied that portion of the motion in open court on April 6, 2012.

## BACKGROUND

Plaintiffs and defendants are all members of Minot Hotel Properties, LLC (the "LLC"), an Illinois limited partnership created by Dixon to develop a Hilton-franchised hotel in Minot, North Dakota, a rapidly developing real estate market as a result of significant oil reserves discovered nearby. The limited partnership was created by an operating agreement governed by Illinois law and last executed by Scott Dixon on behalf of DHG in Illinois. The company's office, registered agent and principal place of business are all located in Illinois. Under the terms of the operating agreement DHG, held a 41.66% membership interest in the LLC. Dixon was designated manager with "exclusive right to control and manage the Company." That agreement also provided that the non-managing members "shall take no part whatever in the control, management, direction or operation of the Company's affairs and shall have no power to buy the Company."

The complaint essentially alleges that defendants, all of whom are located in Minot except for Randall Feist (who is Trustee of the Feist Family Trust, the beneficiaries of which are all located in Minot), engaged in a scheme to divest DHG of its 41.66% interest in the LLC, by preventing it from making a required capital contribution.

Under the operating agreement, DHG was required to contribute $1 million. According to the complaint, Joel Feist, speaking on behalf of the other non-managing members, agreed that DHG would receive credit for $264,000 it had already invested in the project for various expenses. Feist was to provide the construction loan, but failed to do so. After failing to make arrangements with one local bank, and resisting Dixon's efforts to arrange a loan, Feist ultimately urged Dixon to make arrangements with The Peoples State Bank of Velva (the

2

"Bank"), located in Minot. As Dixon began to make arrangements for DHG to make the required capital contribution, Feist offered to lend DHG the necessary funds, providing that Dixon agreed among other things to make Feist the managing member and to change certain provisions of the operating agreement.

DHG used its own funds and third party sources to make the required $736,000 additional contribution. The Bank issued the construction loan, but then the Bank and the non-managing partners ceased communicating with Dixon or anyone representing DHG. The Bank refused to disperse the construction loan. After dozens of inquiries, the Bank ultimately told Dixon that there was an equity shortfall, but refused to reveal the dollar amount, telling him to discuss it with his partners. Feist, however, told Dixon to talk to the Bank. Feist did suggest that some of the $264,000 in costs that DHG had contributed did not seem to him to constitute equity contributions. Feist then began to pressure DHG to borrow the necessary equity from him, subject to DHG reducing its membership interest and relinquishing management to Feist.

Ultimately, the non-managing members, without notice to plaintiffs, held a meeting and purported to make the unpaid capital contribution pursuant to § 2.1 of the operating agreement, and assumed DHG's interest in the company.

## **DISCUSSION**

**Venue**

In an action in federal court based on diversity of citizenship, venue is governed by 28 U.S.C. § 1391(a), which provides for venue: (1) where any defendant resides if all defendants reside in the same state; (2) where a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject action is situated; or (3) if

3

there is no district in which the action may otherwise be brought, any judicial district in which any defendant is subject to the court's personal jurisdiction. The complaint alleges that venue is proper in the Northern District of Illinois because a substantial part of the events giving rise to the claims occurred here. In their opposition to defendants' motion, plaintiffs also argue that venue is proper because a substantial part of the property that is the subject of the action is situated here.

Defendants argue that venue is proper only in North Dakota because all of the allegedly improper activities occurred there. According to defendants, the claims arise out of Dixon's solicitation of investors in Minot for development and construction of a hotel in Minot, North Dakota. The allegedly improper meeting, as well as the Bank's actions all occurred in North Dakota. Additionally, defendants argue that any communications with Dixon in Illinois that they may have originated, are not sufficiently connected to the claims alleged to support venue in the instant district.

Defendants' argument may establish that certain events giving rise to plaintiffs' claims occurred in North Dakota, but that does not establish that venue is not also proper in Illinois. Venue may be proper in more than one judicial district, and as long as the district in which the action is brought has substantial contacts with the subject matter of the action it "makes no difference that another's are more so, or the most so." Chemical Waste Management, Inc. v. Sims, 870 F.Supp. 870, 875 (N.D. Ill. 1994). "The test is not whether a majority of the activities pertaining to the case were performed in a particular district, but whether a substantial portion of the actions giving rise to the claim occurred in the particular district." Peregrine Fin. Group, Inc. v. Green, 2001 WL 1548965 at *4 (N.D. Ill. Sept. 5, 2009).

4

The instant case is not about the construction of a hotel in Minot, North Dakota, but the execution in Illinois of a contract creating an Illinois Limited Liability Company, and the breach of that contract. The company was created in Illinois by the execution here of the operating agreement by Dixon on behalf of DHG. The alleged breach was communicated to Dixon by an email to him in the Northern District of Illinois, and to the extent that defendants have usurped power, they now control (or seek to control) a company located here. Therefore, a substantial portion of the events giving rise to plaintiffs' claims occurred in Illinois.

Additionally, venue is proper under § 1391(a)(2) because a substantial part of the property that is the subject of the action is situated here. As noted, this action is not about a hotel, but about a group of members of an Illinois limited liability company allegedly usurping another member's interest in the company and role as managing member. A membership interest in an Illinois LLC is a form of personal property. 805 ILCS 180/30-1. Thus, DHG's 41.66% constitutes its personal property, located in Illinois. See, Dowling v. Chicago Options Associates, Inc., 365 Ill.App.3d 341, 354 (1st Dist. 2006) (membership interests are personal property subject to execution by a judgment creditor). Described properly, this dispute is about personal property interest located in Illinois, created by Illinois statute and governed by an Illinois contract. Venue is proper in Illinois.

**Transfer**

In the alternative, defendants seek to transfer venue to North Dakota under 28 U.S.C. § 1404(a), which provides that "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Transfer is appropriate only if the moving party demonstrates that

the transferee forum is clearly more convenient than the transferor forum. Coffey v. Van Dorn Iron Works, 796 F.2d 217, 219-20 (7th Cir. 1986). The court considers plaintiff's choice of forum, the situs of material events, the relative ease of access to sources of proof, the convenience of parties and the convenience of witnesses to determine whether transfer is appropriate. Spread Spectrum Screening, LLC v. Eastman Kodak Co., 2010 WL 3516106 at *3 (N.D. Ill. 2010); Amoco Oil Co. v. Mobile Oil Corp., 90 F. Supp.2d 958, 960 (N.D. Ill. 2000).

Generally, the plaintiff's choice of forum is given great weight when, as here, the chosen forum is the plaintiff's home forum. Also, when plaintiff's home forum is the situs of some of the material events, plaintiff's choice is entitled to substantial deference. See Branden Apparel Grp., Inc. v. Quitman Mfg., Co., Inc. 42 F. Supp.2d 821, 833-34 (N.D. Ill. 1999).

The second factor, situs of material events, does not weigh for or against transfer. As noted, the contract was prepared and executed in Illinois. Materials were sent to plaintiffs in Illinois, and any alleged misrepresentations were made to them in Illinois. In contrast, defendants are located in Minot, and the Bank is also there. The alleged improper meeting also took place in Minot. Thus, the situs of material events factor does not militate either for or against transfer.

The convenience of the witnesses is also a tie. The Bank and its attorney, key witnesses for the defendants, are located in Minot, but according to plaintiff, the key third party witness, Anthony Quagliano, is located in Illinois. It would be as inconvenient for him to travel to North Dakota as it would for the North Dakota third party witnesses to travel to Illinois.

The convenience of parties weighs against transfer. Plaintiffs are located here and from everything presented to the court are less likely to be able to litigate in North Dakota than

6

defendants would be able to litigate here. Transfer is inappropriate if "it merely transforms an inconvenience for one party into an inconvenience for the other party." Chemical Waste Management, Inc. 870 F. Supp. at 876.

The final factor, the interests of justice, also weighs against transfer. The interest of justice factor "embraces traditional notions of judicial economy, rather than the private interests of the litigants and their witnesses." TIG Ins. Co. v. Brightly Galvanized Products, Inc., 911 F. Supp. 344, 346 (N.D. Ill. 1996). The likelihood of a speedy trial, possibility of consolidation and the court's familiarity with particular law are all factors that this court considers when evaluating whether transfer would be in the interest of justice. Coffey, 796 F.2d at 221.

The Federal Court Management Statistics Report for the period ending September 30, 2011, indicates that the medium time from filing to disposition of civil cases was 6.6 months in this district as compared to 9.7 months in North Dakota. See Administrative Office of the United States Courts, 2011 Federal Mgmt. Stats. pp. 47, 62. Thus, the likelihood of a speedy resolution weighs somewhat against transfer. Additionally, this court is more likely to be familiar with Illinois law than is the District Court of North Dakota. Therefore, the interests of justice weigh somewhat against transfer.

Accordingly, the court concludes that transfer of the instant action to the District Court of North Dakota which would merely shift the inconvenience from defendants to plaintiffs. Under such circumstances, plaintiffs' choice of forum should control. Therefore, the motion to transfer is denied.

## **CONCLUSION**

For the reasons described above, defendants' motion to dismiss for improper venue or in the alternative to transfer venue to North Dakota is denied. Defendants are ordered to answer the complaint on or before May 21, 2012.

**ENTER:** May 4, 2012

_____
**Robert W. Gettleman**
**United States District Judge**